IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01375-PAB-KLM

SHERRON L. LEWIS, JR.,

      Plaintiff,

v.

JP MORGAN CHASE BANK, NATIONAL ASSOC.,
LARRY CASTLE, in his corporate and individual capacities,
CINDY LOWERY-GRABER, and
THE CASTLE LAW GROUP, LLC,

      Defendants.

_____

### ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Defendants The Castle Law Group, LLC,**[1]

**Cindy Lowery-Graber, and Larry Castle's Motion to Dismiss Amended Complaint**

**Pursuant to Fed. R. Civ. P. 12(b)(6)** [#31][2] (the "Castle Motion") and **Defendant**

**JPMorgan Chase Bank, N.A.'s**[3] **Motion to Dismiss Complaint for Damages, Injunctive**

_____

[1]  *See Notice of Errata* [#59] (correcting the title of the document).

[2]  "[#31]" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this Order and Recommendation.

[3]  Throughout the Complaint [#1], Plaintiff mentions Chase Home Financing, LLC; Chase Home Finance; Chase Manhattan Bank USA, NA; Chase Manhattan Mortgage Corporation; and Defendant JPMorgan Chase Bank, National Association.  The Court takes judicial notice that "[o]n May 1, 2011, . . . Chase Home Finance LLC was merged into JPMorgan Chase Bank, National Association, with JPMorgan Chase Bank, National Association being the successor entity." *Zevalking v. Chase Home Finance*, No. 12-cv-01422-PAB-CBS, 2013 WL 5754942, at *1 n.2 (D. Colo. Oct. 23, 2013); *see also Del. Sec. of State Cert.* [#31-11] at 1.  Further, Defendant Chase is also the successor by merger to The Chase Manhattan Bank.  *See Firstbank Puerto Rico v.*

**Relief and Jury Demand Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 1]** [#60] (the "Chase Motion" and, collectively with the Castle Motion, the "Motions"). On August 30, 2013, Plaintiff filed a response to the Castle Motion [#68] (the "Castle Response"). On September 13, 2013, The Castle Law Group, LLC ("Castle"); Cindy Lowery-Graber; and Larry Castle (collectively, the "Castle Defendants") filed a Reply [#75] (the "Castle Reply"). On September 30, 2013, Plaintiff filed a Response to the Chase Motion [#78] (the "Chase Response"). On October 17, 2013, Defendant JPMorgan Chase Bank, N.A. ("Chase") filed a Reply [#82] (the "Chase Reply"). The Motions are referred to this Court for recommendation regarding disposition [##32, 69]. The Court has reviewed the Motions, the Responses, the Replies, the entire docket, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motions [##31, 60] be **GRANTED**.

## I. Statement of the Case

Plaintiff, who proceeds in this matter *pro se*, brings this action pursuant to 42 U.S.C. § 1983[4]; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.; the Colorado Fair Debt Collections Practice Act ("CFDCPA"); and state tort law.[5] *Compl.* [#1]

---

*Richards*, Civil No. 2007-43, 2008 WL 4293669, at *1 (D.V.I. Sept. 11, 2008). In addition, prior to the merger of Defendant Chase with Chase Home Finance LLC, Chase Manhattan Mortgage Corporation merged into Chase Home Finance LLC. *JPMorgan Chase Bank, Nat. Ass'n v. Hayes*, 13-cv-0731-JFA, 2013 WL 3798405, at *2 (D.S.C. April 26, 2013). Accordingly, the Court treats all references to Chase Home Financing, LLC; Chase Home Finance; Chase Manhattan Bank USA, NA; and Chase Manhattan Mortgage Corporation as references to Defendant Chase.

[4] While Plaintiff mentions 42 U.S.C. §§ 1981, 1985(2), and 1986, Plaintiff fails to state any claims governed by these statutes.

[5] Plaintiff also includes a section entitled "Certification Pursuant to 28 U.S.C. §2403" in his Complaint. *Compl.* [#1] at 2. Plaintiff argues that Colo. R. Civ. P. 120 "work[s] in direct contravention of the Constitutional Due Process clause." *Id.* He further states that 28 U.S.C. §

at 3-4.  In short, Plaintiff challenges the foreclosure of the property located at 2551 York

Street, Denver, Denver County, Colorado (the "Property").  *Id.* at 5.

## A.    Factual Background

### 1.    The HELOC

According to the Complaint and relevant documents,[6] on April 25, 2002, Plaintiff

---

2403 "requires that this court certify this constitutional question to the Colorado State Attorney General."  Plaintiff is correct that 28 U.S.C. § 2403(b) states that in an action in which "the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State . . ."  The Clerk of the Court filed a certificate in compliance with 28 U.S.C. § 2403(b).  *See Certificate* [#64] at 1.  However, precedent makes clear that a judicial proceeding brought pursuant to Rule 120 which follows the dictates of that law does not violate an individual's due process rights under the Fifth and Fourteenth Amendments.  *Driskell v. Thompson*, --- F.Supp.2d ---, 2013 WL 4944187, at *14 (D. Colo. Sept. 10, 2013);  *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL 4485918, at *4 (D. Colo. Sept. 28, 2011).  Therefore, Plaintiff's argument that Rule 120's procedures are unconstitutional based entirely on the procedures themselves, not on any alleged violation of those procedures in this particular case, fails as a matter of law.  *See, e.g., Compl.* [#1] at 2 ("the constrictions of the C.R.C.P. Rule 120 and HB 1387, on its [sic] face, work in direct contravention of the Constitutional Due Process clause."), ¶¶ 47, 55, 60.  To the extent Plaintiff challenges the Rule 120 Proceeding because Defendant Chase "did not have standing to bring the Rule 120 [P]roceeding," *Compl.* [#1] at ¶ 18, the Court lacks subject matter jurisdiction to determine this issue.  *See Brumfiel v. U.S. Bank*, 2013 WL 5495543, at *5 (Oct. 2, 2013) (finding that withdrawal of Rule 120 proceeding rendered plaintiff's argument moot and that, as a result, the Court lacked jurisdiction over the claim).

[6] For the purposes of resolving the Motions to Dismiss, the Court takes as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint.  *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Further, when considering a motion to dismiss, the Court must usually disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment.  *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  The Court may consider documents outside of the complaint on a motion to dismiss in three instances, however.  First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1).  *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).  Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).  Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint.  *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court has examined the numerous documents submitted by the parties in connection with the Motions and has determined that each of the documents cited herein may appropriately be considered by the Court in making its Recommendation on the pending Motions.

obtained a home equity line of credit in the principal amount of $100,000.00 (the "HELOC"). *See Compl.* [#1] at ¶ 1.  As security for the HELOC, Plaintiff executed a Colorado Home Equity Line of Credit Deed of Trust, dated April 25, 2002, encumbering the Property for the benefit of Defendant Chase (the "HELOC DOT"). *See Compl.*, ¶ 1; *see also HELOC DOT* [#60-1] at 1, recorded with the Clerk and Recorder for the City and County of Denver, Colorado (the "Recorder") at Reception Number 2002092319.  Plaintiff's failure to make payments when due under the HELOC DOT constitutes a default under the HELOC DOT. *See HELOC DOT* [#60-1] at §§ 1, 17.  The HELOC DOT also provides that if Plaintiff defaults under the HELOC and fails to cure the default, "we at our option may . . . invoke the power of sale and any other remedies permitted by applicable law." *See id.* at § 17. The HELOC DOT specifically details the procedure that Defendant Chase must follow in invoking the power of sale with the Public Trustee for the City and County of Denver, Colorado (the "Public Trustee").  *See id.*

### 2.    The Mortgage Loan

On or about September 17, 2003, Plaintiff obtained a home mortgage loan, senior in priority to the HELOC, in the principal amount of $241,254.00 to refinance Plaintiff's debt on the Property (the "Mortgage Loan").  *See Compl.* [#1] at ¶ 10.  To evidence the Mortgage Loan, Plaintiff executed a Note, dated September 17, 2003, in the principal amount of $241,254.00 (the "Note"). *See Compl.* [#1] at ¶ 10; *Note* [#60-2] at ¶ 1.  In the Note, Plaintiff promised to repay the Mortgage Loan by making a principal and interest payment each month commencing on November 1, 2003 until loan maturity on October 1, 2033. *See Note* [#60-2] at ¶ 3(A).  Plaintiff's failure to pay the full amount of each monthly payment constituted a "default" under the terms of the Note.  *See id.* at ¶ 6(B) ("If I do not

pay the full amount of each monthly payment on the date it is due, I will be in default.").

As security for the Mortgage Loan, Plaintiff executed a Deed of Trust, dated September 17, 2003, encumbering the Property for the benefit of the lender (the "Mortgage DOT"). *See Compl.* [#1] at ¶ 10; *Mortgage DOT* [#60-3] at 3. The Mortgage DOT was recorded with the Recorder at Reception Number 2003204274. *See Compl.* [#1] at ¶ 11; *Mortgage DOT* [#60-3] at 1. The Mortgage DOT provides that if Plaintiff defaults under the Mortgage Loan and fails to cure the default, "Lender at its option may . . . invoke the power of sale and any other remedies permitted by Applicable Law." *See Mortgage DOT* [#60-3] at § 22. As with the HELOC DOT, the Mortgage DOT specifically details the procedure that Defendant Chase must follow in invoking the power of sale with the Public Trustee. *See id.*

Plaintiff alleges that ownership of the Mortgage Loan and Mortgage DOT were transferred to Freddie Mac prior to November 17, 2009. *Compl.* [#1] at ¶ 12. Plaintiff further alleges that on November 17, 2009, "due to the default state of Plaintiff's loan," Defendant Chase "sent Plaintiff an agreement entitled Home Affordable Modification Trial Period Plan [("HAMTPP")] . . . which Plaintiff accepted . . ." *Id.* at ¶ 13. Plaintiff avers that he made the required trial period payments under the HAMTPP but that Defendant Chase "failed to provide Plaintiff with the Home Affordable Modification Agreement as promised." *Id.* at ¶ 15.

### 3. The Foreclosure Proceedings

Plaintiff defaulted on his obligations under the HELOC. *See Compl.* [#1] at ¶ 2 ("due to the default status of Plaintiff's loan"). Given Plaintiff's default under the HELOC, on or about December 3, 2009, Defendant Chase, through its counsel Defendant Castle,

submitted a Notice of Election and Demand for Sale (the "HELOC NEDS") to the Public

Trustee.   *See id.*; *see also HELOC NEDS* [#60-4] (recorded with the Recorder on

December 15, 2009 at reception number 2009162024).  This procedure was acknowledged

by Plaintiff in the HELOC DOT.  *See HELOC DOT* [#60-1] at ¶ 17.  Plaintiff alleges that the

Property was scheduled to be sold on April 25, 2010.  *Compl.* [#1] at ¶ 3.   He further

alleges that this violated state foreclosure law.  *Id.* at ¶ 4.

On January 19, 2010, Plaintiff entered into a Forbearance Agreement with Chase

Home Finance (the "Forbearance Agreement") regarding the HELOC.  *See Compl.* [#1] at

¶¶ 5-7; *see generally Forbearance Agreement* [#1-1].   Under the Forbearance Agreement,

Plaintiff agreed that "the terms and conditions of the Loan Documents remain in full force

and effect" and that he would make certain monthly payments to Defendant Chase.  *See*

*Compl.* [#1] at ¶ 6; *see also Forbearance Agreement* [#1-1] §§ 1, 2.[7]   In exchange,

Defendant Chase "agree[d] to forbear from exercising its rights under the Loan

Documents." *See Forbearance Agreement* [#1-1] at 1. Accordingly, Chase did not complete

foreclosure proceedings under the HELOC DOT.  *See Compl.* [#1] at ¶ 9.  Plaintiff alleges

that while he was making payments under the Forbearance Agreement, Defendant Chase,

through its counsel Defendant Castle, "maintained the foreclosure action postponing the

sale date 49 times, until May 10, 2011[,] when Plaintiff was forced to remit to the Denver

County [P]ublic [T]rustee $3,231.05 to be paid to Defendant Chase to stop the foreclosure

of" the Property.  *Id.* at ¶ 8.  Therefore, Plaintiff alleges, "the Forbearance Agreement . . .

---

[7] Plaintiff alleges that he made those payments until August 23, 2012 "when Plaintiff was notified that Chase Home Finance, without reason or justification, would accept no further payments."  *Compl.* [#1] at ¶ 7.

was not made in good faith and misrepresented the true ownership of the loan.  No Rule 120 proceeding was ever initiated in this case," in alleged violation of Plaintiff's constitutional rights.  *Id.* at ¶ 9.

Plaintiff also defaulted on his obligations under the Mortgage Loan. *See id.* at ¶ 13. On or about May 7, 2012, Chase submitted a Notice of Election and Demand for Sale (the "Mortgage NEDS") to the Public Trustee. *See Compl.* [#1] at ¶ 16; *see generally Mortgage NEDS* [#60-5] (recorded with the Recorder on May 14, 2012 at reception number 2012062780).  On July 13, 2012, Chase filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120, Colorado Rules of Civil Procedure (the "Sale Motion") in the District Court for the City and County of Denver, Colorado (the "State Court"), Case No. 2012CV4356 (the "Rule 120 Proceeding"). *See Compl.* [#1] at ¶ 17; *see generally Sale Motion* [#60-6].  On June 25, 2013, the State Court entered an Order Authorizing Sale [#60-7] (the "Sale Order").   However, on July 24, 2013, Defendant Chase submitted a Withdrawal of Notice of Election and Demand for Sale [#60-8] (the "NEDS Withdrawal") to the Public Trustee, and the Public Trustee executed the NEDS Withdrawal on the same day. *See generally NEDS Withdrawal* [#60-8] (recorded with the Recorder on July 24, 2013 at Reception Number 2013108197).   On July 25, 2013, Defendant Chase also filed a motion with the State Court withdrawing the Rule 120 Proceeding and asking that the Sale Order be vacated (the "Withdrawal Motion"). On August 5, 2013, the State Court entered an Order granting the Withdrawal Motion [#60-9] (the "Rule 120 Withdrawal Order"). *See generally Rule 120 Withdrawal Order* [#60-9].   Thus, there is no pending Rule 120 proceeding or foreclosure of the Property.

Plaintiff argues that the Sale Order was void because Defendant Chase did not own

the loan.  *Compl.* [#1] at ¶ 18.  He  maintains that neither the Note nor the "deed of trust"[8] makes reference to Defendant Chase or Chase Home Finance, LLC.  *Id.* at ¶ 19.  Plaintiff further states that neither document has been endorsed or transferred to Defendant Chase or Chase Home Finance, LLC.  *Id.* at ¶ 20.

## B.    Plaintiff's Claims

Plaintiff  brings  six  claims  in  his  Complaint:  (1)  intentional  and  negligent misrepresentation against Defendant Chase and Defendant Larry Castle; (2) violations of the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, as related to notice of the HELOC foreclosure proceeding under Colo. R. Civ. P. 120, against Defendant Chase and  Defendant  Larry  Castle;  (3)  intentional  and  negligent  misrepresentation  against Defendant Chase, Defendant Larry Castle, and Defendant Cindy Lowery-Graber;  (4) violations  of  the  Fifth  and  Fourteenth  Amendments  pursuant  to  42 U.S.C. § 1983, as related to drafting of the Colorado state legislature bill that became Colo. R. Civ. P. 120, HB-1387, against Defendant Chase, Defendant Larry Castle, and Defendant Cindy Lowery-Graber; (5) a claim against Defendant Chase and Defendant Larry Castle for violations of the FDCPA and the CFDCPA; and (6) a claim against all Defendants for violations of the FDCPA and the CFDCPA.  *See Compl.* [#1] at ¶¶ 21-88.  As relief, Plaintiff asks the Court to: (1) issue a declaratory judgment stating that the foreclosure on the Property is "null and void," setting aside any order issued in the Rule 120 proceeding, stating that Defendant Chase "has no ownership interest in the promissory note referenced in the 1st Mortgage lien . . ., nor in the property securing it[,]" and stating that "the [Sale] Order is void for lack of

---

[8]  Plaintiff does not state whether he is referring to the HELOC DOT or the Mortgage DOT.

standing[;]" (2) enjoin the sale of the Property; and (3) enter an order quieting title to the Property in favor of Plaintiff. *Id.* at ¶¶ 89-92. Plaintiff also seeks monetary damages totaling $20,002,000.00. *Id.* at 27-28.

## II. Standard of Review

### A.    Rule 12(b)(6)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts

9

necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 (internal citation and quotation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## B.   *Pro Se* Litigants

The Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

Notably, Mr. Lewis has ample experience litigating in this District, and is aware (or at the very least, should be aware) of his obligations to properly prosecute his lawsuit, has knowledge of the rules applicable to his case, and has previously been instructed regarding

the law governing certain of the claims he asserts in this litigation. *See* Case Nos. 89-cv-01122-ZLW (breach of contract); 04-cv-02055-MSK-OES (interested party); 05-cv-00640-WYD-MJW (real property); 06-cv-00888-WYD (real property); 06-cv-01441-WYD-MJW (real property related to bankruptcy); 06-cv-01547-WYD (real property related to bankruptcy); 06-mc-00020-NONE (appointment of counsel related to bankruptcy); 06-mc-00032-WYD (injunction of state court proceedings); 06-mc-00033-WYD (injunction of state court proceedings); 07-cv-00243-RPM (civil rights related to bankruptcy); 08-cv-01094-PAB-KLM   (FDCPA);   08-cv-01563-LTB-KLM   (FDCPA);   08-cv-01612-LTB-KLM (unauthorized practice of law); 10-cv-01502-WYD-MEH (real property); 11-cv-03298-CMA-KLM (real property, FDCPA); 11-cv-03387-CMA-KLM (FDCPA, 42 U.S.C. § 1983, and state tort law); 12-cv-00565-CMA-KLM (real property, FDCPA).; 13-cv-01375-PAB-KLM (instant action).

## C.    The Motions[9]

Defendant Chase offers four main arguments for dismissal of Plaintiff's claims in the Chase Motion.   First, Plaintiff's section 1983 claims should be dismissed because: (1) Defendant Chase is not a state actor and (2) Plaintiff has not been deprived of any rights, privileges, or immunities because no foreclosure sale occurred. *Chase Motion* [#60] at 7-9. Second, Plaintiff's intentional and negligent misrepresentation claims are barred by the economic loss rule. *Id.* at 10-11.   Third, Plaintiff's claims brought pursuant to the FDCPA fail because: (1) the notices Plaintiff received do not constitute debt collection activity, (2) Defendant Chase is not a debt collector, and (3) Plaintiff's claims are barred by the one-

---

[9]   The Court addresses only those arguments raised in the Motions that merit analysis.

year statute of limitations. *Id.* at 11-13. Finally, Plaintiff's request for declaratory relief regarding the Rule 120 Proceeding is moot, Plaintiff's request for declaratory relief quieting title should be denied because Plaintiff is in default, and Plaintiff's request for a declaration that Defendant Chase has no ownership interest in the Note or the Property fails because Plaintiff has not stated a claim that would support such relief. *Id.* at 13-15.

In the Castle Motion, the Castle Defendants first offer argument regarding Defendant Chase's standing to initiate foreclosure proceedings on the Property. *Castle Motion* [#31] at 1-4. The Castle Defendants then argue that: (1) the section 1983 claims fail as a matter of law because the Castle Defendants are not state actors, (2) Plaintiff's intentional and negligent misrepresentation claims fail because Defendant Chase was the proper party to seek foreclosure of the Property, and (3) Plaintiff's request for declaratory relief fails because no actual controversy exists. *Id.* at 4-9, 14-15. The Castle Defendants also argue that Plaintiff's FDCPA claims fail because the notices sent to Plaintiff accurately reflected the amounts owed, threatening to take legal action that is lawful and that a debt collector intends to take does not violate the FCPA, "acts taken by a creditor authorized by statute and/or by agreement between a debtor and creditor do not violate" the FDCPA, and the Castle Defendants provided Plaintiff with information regarding his rights to dispute the debt and to demand verification of the debt as required by the FDCPA. *Id.* at 9-14.

### III.  Analysis

### A.    Section 1983 Claims

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "[T]he purpose of § 1983 is to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how . . . wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotation omitted). Thus, the only proper defendants in a section 1983 action are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 172 (1961); *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1441, 1447 (10th Cir.1995).

Four tests are used to determine whether a private individual or entity may be found to be acting under color of state law and, therefore, may be liable pursuant to section 1983. *See Gallagher*, 49 F.3d at 1447. In short, these tests are the nexus test, the symbiotic-relationship test, the joint-activity test, and the public-functions test. *See id.* The nexus tests requires the Court to consider "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). The symbiotic-relationship test asks whether the state and the private party have "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship has formed. *Id.* (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972); quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). The joint-activity test inquires whether the private party is "a willful participant in joint activity with the State or its agents." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). The public-function test determines whether the private entity has exercised "powers traditionally reserved to the State." *Id.* (quoting *Jackson*, 419

13

U.S. at 352).   In short, pursuant to each test, a plaintiff must show that "the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'"   *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982)).

The allegations in Plaintiff's Complaint fall far short of meeting the requirements of the nexus test, the symbiotic-relationship test, the joint-activity test, or the public-functions test.  Plaintiff has not alleged that "there is a sufficiently close nexus between the State and the challenged action of [Defendants Chase, Larry Castle, and Cindy Lowery-Graber] so that the action of the latter may be fairly treated as that of the State itself."  *Jackson*, 419 U .S. at 351.  Nor has Plaintiff  alleged that the State and Defendants Chase, Larry Castle, and Cindy Lowery-Graber "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship formed.  *Moose Lodge No. 107*, 407 U.S. at 175; *Burton*, 365 U.S. at 725.  Further, Plaintiff does not allege that Defendants Chase, Larry Castle, and Cindy Lowery-Graber were "willful participant[s] in joint activity with the State or its agents."  *Gallagher*, 49 F.3d at 1447.  Finally, Plaintiff fails to allege that Defendants Chase, Larry Castle, and Cindy Lowery-Graber exercised "powers traditionally reserved to the State."  *Jackson*, 419 U.S. at 352.

As Defendant Chase argues, a private actor does not subject himself to a section 1983 claim simply by availing himself of a state procedure.  *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000); *Elliot v. Chrysler Fin.*, 149 F. App'x 766, 768 (10th Cir. Sept. 2, 2005) (unpublished decision) (private lender's repossession of car pursuant to state law did not constitute state action); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL

14

4485922, at *10 (D. Colo. July 28, 2011) ("relief under § 1983 cannot be premised solely on an argument that a private actor misused available state procedures, particularly in the absence of overt and significant assistance from state officials"); *Chase Motion* [#60] at 7. Accordingly, the Court respectfully **recommends** that Plaintiff's second and fourth claims brought pursuant to 42 U.S.C. § 1983 be **dismissed with prejudice** as no amendment could cure the legal deficiencies in these claims. *Cf. Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## B.    FDCPA Claims

### 1.    Defendant Chase

"The FDCPA applies only to debt collectors." *Makowski v. First Nat. of Nebraska, Inc.*, No. 12-cv-02280-CMA-MEH, 2013 WL 754922, at *6 (Feb. 6, 2013). The FDCPA specifically excludes from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be *owed or due another* to the extent such activity . . . concerns *a debt which was not in default at the time it was obtained by such person . . . .*" 15 U.S.C. § 1692(a)(6)(F) (emphasis added). Further, "[c]ourts have consistently ruled that a creditor, mortgage servicing company, or assignee of the debt is not a 'debt collector' under the FDCPA if the entity acquired the loan before it was in default." *Makowski*, 2013 WL 754922, at *6 (citation omitted); *Garrett v. BNC Mortg., Inc.*, 929 F.Supp.2d 1120, 1126 (D. Colo. 2013) ("The term does not include mortgage loan servicers, so long as they acquire the servicing rights before the loan is in default.").

In this case, Defendant Chase was not a "debt collector" pursuant to the FDCPA for two reasons. First, while Plaintiff argues that the Sale Order was void because Defendant

Chase did not own the loan, that neither the Note nor the "deed of trust" makes reference to Defendant JPMorgan or Chase Home Finance, LLC, and that neither document has been endorsed or transferred to Defendant JPMorgan or Chase Home Finance, LLC, *Compl.* [#1] at ¶¶ 18-20, these conclusory allegations do not overcome the evidence provided by Defendant Chase with the Chase Motion and the documents provided by Plaintiff.[10]   *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a case of action will not do.'" Nor does a complaint suffice of it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (quoting *Twombly*, 550 U.S. at 555, 557)).   Defendant Chase initiated foreclosure proceedings based on Plaintiff's defaults under the HELOC and the Mortgage Loan.   The HELOC DOT was entered into by Plaintiff in 2002 in favor of Defendant Chase.[11]   *See generally HELOC DOT* [#60-1] at 1.   Similarly, Plaintiff executed the Note evidencing the Mortgage Loan on September 17, 2003, in the principal amount of $241,254.00 in favor of Defendant Chase.[12]   *See Compl.* [#1] at ¶ 10; *Note* [#60-2] at ¶ 1.   Furthermore, Plaintiff's focus on "ownership" of the debt is misplaced.   "In Colorado, non-judicial foreclosure based upon a violation of

---

[10]   As noted, *supra* at n.6, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint.   *GFF Corp.*, 130 F.3d at 1384.   Here, the Court has considered the documents Plaintiff attached to his Complaint as well as certain documents provided by Defendant Chase which are referenced by Plaintiff in his Complaint and/or are central to his claims, including the HELOC DOT, the Note, and the Mortgage DOT.   In addition, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record, such as the Sale Order.   *Tal*, 453 F.3d at 1265 n.24.

[11]   The HELOC DOT states that the beneficiary is Chase Manhattan Bank USA, N.A. *HELOC DOT* [#60-1] at 1.   As noted, *supra* at n.3, Defendant Chase is the successor by merger of Chase Manhattan Bank USA, N.A.

[12]   The Note states that the Lender is Chase Manhattan Mortgage Corporation.   Note [#30-2] at 1.   As noted, *supra* at n.3, Defendant Chase is the successor by merger of Chase Manhattan Mortgage Corporation.

a deed of trust provision can be accomplished by 'a holder of an evidence of debt.'"
*McDonald v. OneWest Bank, F.S.B.*, 680 F.3d 1264, 1266 (10th Cir. 2012) (quoting Colo.
Rev. Stat. § 38-38-101(1)).   Faced with the evidence propounded by Plaintiff and
Defendant Chase, the Court concludes that Defendant Chase initiated foreclosure
proceedings on the Property to collect its own debt as evidenced by the Note and the
Mortgage DOT.   Second, Plaintiff does not allege that he was in default when Defendant
Chase became the noteholder.   As such, Defendant Chase is excluded from the definition
of "debt collector" for the purposes of the FDCPA and Plaintiff's FDCPA claims against
Defendant Chase should be dismissed with prejudice for failure to state a claim upon which
relief may be granted.   *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir.
2006) (dismissal on the merits of the complaint is ordinarily with prejudice). Therefore, the
Court respectfully **recommends** that Plaintiff's FDCPA claims against Defendant Chase
(contained in claims five and six) be **dismissed with prejudice** pursuant to Fed. R. Civ.
P. 12(b)(6).

## 2.    Defendants Larry Castle, Cindy Lowery-Graber, and Castle[13]

Through his fifth and sixth claims, Plaintiff also asserts that Defendants Larry Castle,
Cindy Lowery-Graber, and Castle violated the FDCPA by initiating both the December 15,
2009 foreclosure proceeding and the May 2012 foreclosure proceeding.   *Compl.* [#1] at ¶¶
66 (fifth claim brought because of initiation of "the foreclosure action [on] December 15,

---

[13]   The Castle Defendants deny that they are "debt collectors" or are engaged in "debt collection" pursuant to the FDCPA.  *Castle Motion* [#31] at 9 n5.  However, in communication with Plaintiff regarding the Rule 120 Proceeding, Defendant Castle made clear that it "may be acting as a debt collector and is attempting to collect a debt."  *See Mortgage NEDS* [#31-12] at 1. Accordingly, the Court analyzes Plaintiff's FDCPA claims against the Castle Defendants.

2009"), 78 ("sixth claim brought against certain Defendants who "initiated the foreclosure action [on] May 7, 2012"); *see also HELOC NEDS* [#60-4] (recorded with the Recorder on December 15, 2009 at reception number 2009162024); *Mortgage NEDS* [#60-5] (recorded with the Recorder on May 14, 2012 at reception number 2012062780).

"An action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  Plaintiff initiated this lawsuit on May 28, 2013. *See generally Compl.* [#1].  As a result, Plaintiff's fifth cause of action, which is based on actions taken in 2009, is time-barred.  *Hill v. Wells Fargo Bank, N.A.*, --- F.Supp.2d ---, 2013 WL 2297056, at *6-7 (N.D.Ill. 2013) (dismissing FDCPA claim pursuant to Fed. R. Civ. P. 12(b)(6) as time-barred); *cf. Bd of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) ("Statute of limitations are not simply technicalities.  On the contrary, they have long been respected as fundamental to a well-ordered judicial system.").  Accordingly, the Court respectfully **recommends** that Plaintiff's fifth cause of action for violation of the FDCPA against Defendant Larry Castle be **dismissed with prejudice**.  *See Neiberger v. Rudek*, 450 F. App'x 719, 724 (10th Cir. 2011) (unpublished decision) (quoting 9 Charles Alan Wright & Arthus R. Miller, *Fed. Prac. & Proc.* § 2369, at 605-08 (3d ed. 2008) for the proposition that "the dismissal, due to the operation of the applicable statute of limitations, has the effect of a dismissal with prejudice."); *Shinn v. Melberg*, No. 12-cv-01180-LTB-BNB, 2013 WL 1855852, at *3 (D. Colo. May 1, 2013) (dismissing claims with prejudice as barred by the statute of limitations).

With regard to Plaintiff's FDCPA claim brought in his sixth cause of action, the Tenth

Circuit has held that "where the plaintiff's FDCPA claim arises from the instigation of a debt collection suit," such claim accrues on the date the alleged debtor was served with the complaint. *Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002).  The Rule 120 Proceeding relating to the Mortgage was initiated on July 13, 2012, when the Sale Motion was filed. *See Compl.* [#1] at ¶ 17; *see generally Sale Motion* [#60-6].  So, while it is unclear when Plaintiff was served with the Sale Motion, it is clear that it could not have been before July 13, 2012.  Accordingly, Plaintiff's FDCPA claim relating to the 2012 foreclosure proceeding is not time-barred.

Plaintiff's sixth cause of action alleges violations of the following provisions of the FDCPA: 15 U.S.C. § 1392s(2)(A), 15 U.S.C. § 1692e(4), 15 U.S.C. § 1692e(5), 15 U.S.C. § 1692e(10), 15 U.S.C. § 1692f(1), and 15 U.S.C. § 1692g(b). *Compl.* [#1] at ¶¶ 81-87. The Court examines each in turn.

The Court recently explained the standard applied when considering claims brought pursuant to sections 1692e and 1692f of the FDCPA:

> When deciding claims brought pursuant to §§ 1692e and 1692f of the FDCPA, courts have used a "least sophisticated consumer" standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases).  The least sophisticated consumer standard ensures protection to all "consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320.  At least five courts of appeal have applied the least sophisticated standard to alleged violations of § 1692e and § 1692f. *See, e.g.*, *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Lesher v. Law Offices of Mitchell N. Kay, PC,* 650 F.3d 993, 1002 (3d Cir. 2011); *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions Funding, LLC,* 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard).  The Tenth Circuit has not expressly adopted this standard, but it has, in an unpublished opinion,

"applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree v. Marianos,* 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov.3, 1997) (internal quotation marks omitted).  Accordingly, because the FDCPA is a remedial statute that "should be construed liberally in favor of the consumer," *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002), the Court will apply the least sophisticated consumer standard to plaintiff's claims brought pursuant to § 1692e and § 1692f.

Extending protection to the "naive and the credulous," however, does not mean that debt collectors may be held liable for "unreasonable misinterpretations." *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993). The least sophisticated consumer is not a "dimwit," but rather "uninformed, naive, and trusting." *Wahl v. Midland Credit Mgmt., Inc.,* 556 F.3d 643, 645-46 (7th Cir. 2009) (quoting *Veach v. Sheeks,* 316 F.3d 690, 693 (7th Cir. 2003)) (internal quotation marks omitted).  Such a consumer possesses "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences," *Id.,* (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.,* 211 F.3d 1057, 1060 (7th Cir. 2000)) (internal quotation marks omitted), while lacking the "astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer."  *Ferree,* 1997 WL 687693 at *1 (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996)) (internal quotation marks omitted).

At least three circuits have held that false statements must be material in order to be actionable under the FDCPA.  *See Donahue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010) (mislabeling combined sum of late fees and interest as interest is not actionable under §§ 1692e or 1692f because it is not material); *Hahn v. Triumph P'ships, LLC,* 557 F.3d 755, 758 (7th Cir. 2009) (labeling original principal plus compounded interest as "principal" was not a material misstatement under the FDCPA); *Miller v. Javitch, Block & Rathbone,* 561 F.3d 588, 596-97 (6th Cir. 2009) (holding that materiality requirement applies to a claim under § 1692e).  The courts in these cases applied the least sophisticated consumer standard.  *See Donahue,* 592 F.3d at 1030; *Hahn,* 557 F.3d at 758; *Miller,* 561 F.3d at 592. The courts have relied in part on the Supreme Court's statement in *Carter v. United States* that federal statutes "punishing a scheme or artifice" to defraud "implicitly contain a materiality requirement ."  530 U.S. 255, 266, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000) (citing *Neder v. United States,* 527 U.S. 1, 23, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)) (internal quotation marks omitted). In addition, the Tenth Circuit, in considering a claim under § 1692g, stated that the "FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or ultimately harmless ." *Maynard v. Cannon,* 401 F. App'x 389, 397 (10th Cir. 2010) (unpublished).  Materiality is assessed in light of the purpose of the FDCPA, which is to "provide

information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Hahn,* 557 F.3d at 757-58. Thus, a false statement is material if it would impact the least sophisticated consumer's decisions with respect to a debt. *See id.*

*Hudspeth v. Capital Mgmt. Servs., L.P.*, No. 11-cv-03148-PAB-MEH, 2013 WL 674019, at *4 (D. Colo. Feb. 25, 2013).

### a.    Section 1692e(2) and 1692e(10)

Section 1692e(2) of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* at § 1692e. The statute specifically prohibits the false representation of the "character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A). Similarly, section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* at § 1692e(10). In his Complaint, Plaintiff alleges that the Castle Defendants violated these sections because when they "initiated the foreclosure action [on] May 7, 2012 . . . they knew that they did not own the indebtedness upon which the action was based" and that they sent "threatening notices" to Plaintiff on May 7, 2012 and July 16, 2012. *Compl.* [#1] at ¶¶ 78, 81-82.

With regards to Plaintiff's allegation that Defendant Chase did not own the debt, as the Court concluded above, Defendant Chase initiated foreclosure proceedings on the Property to collect its own debt. *See* Section III(B)(1), *supra.* Accordingly, Plaintiff's argument to the contrary cannot form a basis for an FDCPA claim against the Castle Defendants.

In response to Plaintiff's allegations regarding the notices sent to him on May 7,

2012 and July 16, 2012, the Castle Defendants have provided copies of these notices [##31-12[14], 31-14[15]] and argue that the notices do not violate the FDCPA. Plaintiff believes that these notices violate the FDCPA because they contain "material representations . . . as the amounts and the legal basis to collect from or enforce against the Plaintiff [and] cannot be substantiated by the Defendants indentified [sic] herein with any evidence of ownership, recorded or otherwise, of the Plaintiff's promissory note or mortgage nor any agreement between Plaintiff and Defendants as it relates to such mortgage loan." *Compl.* [#1] at ¶ 82. This, again, indicates that Plaintiff's basis for asserting that Defendants violated the FDCPA is based solely on his belief that Defendant Chase did not have a right to initiate foreclosure proceedings against the Property. However, that belief is incorrect.

Defendant Chase initiated the Rule 120 Proceeding based on Plaintiff's defaults under the Mortgage Loan. Plaintiff executed the Note evidencing the Mortgage Loan on September 17, 2003, in the principal amount of $241,254.00 in favor of Defendant Chase.[16] *See Compl.* [#1] at ¶ 10; *Note* [#60-2] at ¶ 1. In addition, as security for the Mortgage Loan, Plaintiff executed the Mortgage DOT, dated September 17, 2003, encumbering the

---

[14] This is the Mortgage NEDS which was also provided by Defendant Chase at [#60-5].

[15] This document contains the Sale Motion, a copy of which was provided by Defendant Chase at [#60-6], and a Notice of Hearing (the "Notice of Hearing") with a Certificate of Posting and Mailing of Notice which states that it was mailed to Plaintiff on July 11, 2012. While Plaintiff states that one of the notices he received was sent to him on July 16, 2012, no document bearing this date has been provided by any party in this action and based on the Court's review of the documents, the Notice of Hearing is likely the document Plaintiff intends to reference.

[16] The Note states that the Lender is Chase Manhattan Mortgage Corporation. Note [#60-2] at 1. As noted, *supra* at n.3, Defendant Chase is the successor by merger of Chase Manhattan Mortgage Corporation.

Property for the benefit of Defendant Chase.[17]  *See Compl.* [#1] at ¶ 10; *Mortgage DOT* [#60-3] at 3.  In addition, the Mortgage DOT specifically allows Defendant Chase to initiate foreclosure and sale proceedings.  *See Mortgage DOT* [#60-3] at § 22 (if Plaintiff defaults under the Mortgage Loan and fails to cure the default, "Lender at its option may . . . invoke the power of sale and any other remedies permitted by Applicable Law.").  While Plaintiff offers a conclusory allegation that ownership of the Mortgage Loan and Mortgage DOT were transferred to Freddie Mac prior to November 17, 2009, *Compl.* [#1] at ¶ 12, that allegation is contrary to the state judge's finding that Defendant Chase was in possession of the original Note and, therefore, was entitled to foreclose on the Property.  *See Trans.* [#31-16] at 90:8-9.  Further, a review of the notices [##31-12, 31-14] does not reveal any material false statements that would impact the least sophisticated consumer's decisions with respect to the debt.

   b.    **Sections 1692e(4) and 1692e(5)**

   Section 1692e(4) of the FDCPA prohibits debt collectors from representing or implying "that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action."  *Id.* at § 1692e(4).  Similarly, section 1692e(5) of the FDCPA prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."  *Id.* at § 1692e(4).  These sections of the FDCPA are designed to keep debt collectors from making empty threats to scare debtors.

---

[17]  The Mortgage DOT states that the Lender is Chase Manhattan Mortgage Corporation. Mortgage DOT [#60-3] at 1.  As noted, *supra* at n.3, Defendant Chase is the successor by merger of Chase Manhattan Mortgage Corporation.

Here, Plaintiff's allegations fail to support a claim for relief under either of these sections because Defendant Chase had a legal right to foreclose and initiated the Rule 120 Proceeding. Therefore, as Defendant Chase's counsel, the Castle Defendants were acting lawfully when communicating to Plaintiff their intent to initiate foreclosure proceedings on behalf of Defendant Chase.

### c.    Section 1692f(1)

Section 1692f(1) of the FDCPA states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* at § 1692f. This includes "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f(1). As noted above, the Mortgage DOT specifically authorized Defendant Chase to foreclose on the Property if Plaintiff defaulted and did not cure. Accordingly, the Castle Defendants, as counsel to Defendant Chase, did not violate the law by informing Plaintiff of their intent to initiate the Rule 120 Proceeding on behalf of Defendant Chase or by actually doing so. *See Maynard v. Cannon*, 401 F. App'x 389, 397-98 (10th Cir. 2010) (unpublished decision); *Peterson-Hooks v. First Integral Recovery, LLC*, No. 12-cv-01019-PAB-BNB, 2013 WL 2295449, at *4 (May 24, 2013).

### d.    Section 1692g(b)

Section 1692g(b) of the FDCPA states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address

of the original creditor, is mailed to the consumer by the debt collector.

Plaintiff fails to allege any facts to support his claim that the Castle Defendants violated Section 1692g(b).  *See Compl.* [#1] at ¶ 81 (listing provisions of the FDCPA that Plaintiff believes Defendants violated).  Therefore, Plaintiff's Complaint fails to meet the pleading requirement articulated in *Iqbal.  See Iqbal*, 556 U.S. 662, 678 (2009) ("[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  (citation omitted)).

For the reasons stated above, the Court respectfully **recommends** that Plaintiff's claims contained in his sixth cause of action for violation of sections 1692e and 1692f of the FDCPA against the Castle Defendants be **dismissed with prejudice** and that Plaintiff's claim that the Castle Defendants violated Section 1692g of the FDCPA be **dismissed without prejudice**.

**B.     Plaintiff's Remaining Claims Sound in State Law**

The Court notes that Plaintiff's only remaining claims—two claims of intentional and negligent misrepresentation and two claims brought pursuant to the CFDCPA[18]—sound in state law.  These are claims which "[f]ederal law neither created . . . nor is federal law a necessary element of [them]."  *Tinner v. Farmers Ins. Co.*, 504 F. App'x 710, 714 (10th Cir. Dec. 4, 2012) (unpublished decision) (citation and quotation omitted).  As a result, in order to consider the remaining claims, the Court must exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The exercise of supplemental jurisdiction "is within a district

---

[18] Plaintiff's fifth and sixth claims purport to be brought pursuant to both the FDCPA and the CFDCPA.  *See Compl.* [#1] at ¶¶ 68-69, 79.

court's discretion." *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. June 24, 2013). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir.1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . , the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims"). Here, subject matter jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Compl.* [#1] at 6. Plaintiff does not plead any basis for diversity jurisdiction and it appears from Plaintiff's allegations that both Plaintiff and Defendant Larry Castle are residents of the State of Colorado. *Id.* at 5 (identifying Plaintiff as residing in Colorado and stating that Defendant Larry Castle "is a resident of Colorado"). Thus, having recommended dismissal of Plaintiff's claims brought pursuant to section 1983 and the FDCPA, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and that such claims be **dismissed without prejudice**.

### IV. Conclusion

For the reasons stated above,

IT IS RESPECTFULLY **RECOMMENDED** that the Castle Motion [#31] and the Chase Motion [#60] be **GRANTED** as follows: Plaintiff's first and third claims for intentional and negligent misrepresentation be **DISMISSED without prejudice**, Plaintiff's second and fourth claims brought pursuant to 42 U.S.C. § 1983 be **DISMISSED with prejudice**,

Plaintiff's fifth claim for violation of the FDCPA which is time-barred be **DISMISSED with prejudice**, Plaintiff's sixth claim for violation of the FDCPA against Defendant Chase be **DISMISSED with prejudice**, Plaintiff's claims contained in his sixth cause of action for violation of sections 1692e and 1692f of the FDCPA against the Castle Defendants be **DISMISSED with prejudice**, Plaintiff's claim that the Castle Defendants violated Section 1692g of the FDCPA be **DISMISSED without prejudice**, and Plaintiff's fifth and sixth claims asserted pursuant to the CFDCPA against all Defendants be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that the Motion of Defendants Larry Castle and the Castle Law Group, LLC to Dismiss or to Quash Plaintiff's Complaint for Insufficient Service of Process [#28] is **DENIED as moot**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73

F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 12, 2013                    BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge