IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01375-PAB-KLM

SHERRON L. LEWIS, JR.,

      Plaintiff,

v.

JP MORGAN CHASE BANK, NATIONAL ASSOC.,
LARRY CASTLE, in his individual and corporate capacity,
CINDY LOWERY-GRABER, and
THE CASTLE LAW GROUP, LLC,

      Defendants.

---

**ORDER**

---

This matter is before the Court on the Order and Recommendation of United States Magistrate Judge (the "Recommendation") [Docket No. 90] filed on December 12, 2013. The magistrate judge recommends that, pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court grant in part the motions to dismiss filed by defendants Larry Castle, Cindy Lowery-Graber, and the Castle Law Group, LLC (collectively the "Castle defendants") [Docket No. 31] and defendant JPMorgan Chase Bank, National Association ("Chase") [Docket No. 60]. Plaintiff Sherron L. Lewis, Jr. filed a timely objection. Docket No. 97. The Court will "determine de novo any part of the magistrate judge's disposition that has been properly objected to" by plaintiff. Fed. R. Civ. P. 72(b)(3). In the absence of a proper objection, the Court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150

(1985) ("[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").  In light of plaintiff's pro se status, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991).

Because the Recommendation contains a detailed statement of the case, the Court will only discuss the facts relevant to the resolution of plaintiff's objections.[1]  *See* Docket No. 90 at 3-9.  The magistrate judge recommends that the Court dismiss with prejudice Mr. Lewis' claims brought pursuant to 42 U.S.C. § 1983; dismiss with prejudice Mr. Lewis' fifth claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; dismiss with prejudice Mr. Lewis' sixth claim for violation of the FDCPA against defendant Chase; dismiss with prejudice Mr. Lewis' claim that the Castle defendants violated of § 1692e and § 1692f of the FDCPA; dismiss without prejudice Mr. Lewis' claim that the Castle defendants violated § 1692g of the FDCPA; and dismiss without prejudice all of Mr. Lewis' claims arising under state

---

[1]When considering a motion to dismiss, a court typically disregards facts supported by documents other than the complaint unless it first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991).  However, a court may consider documents outside of the complaint on a motion to dismiss in certain instances.  Of relevance here is the exception permitting a court to consider documents subject to judicial notice, including court documents and matters of public record, *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006), as well as the exception allowing consideration of such documents that are both central to a plaintiff's claims and to which a plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).  The Court has examined the documents submitted by the parties that are attached to or referenced in the complaint and has determined that each of the documents cited in this opinion may appropriately be referenced by the Court.

law.  Docket No. 90 at 26-27.  Mr. Lewis objects to the Recommendation's conclusion

that the Court should dismiss his § 1983 claims against all defendants and his FDCPA

claims against defendant Chase.  Docket No. 97 at 2, 8.

## I.  ANALYSIS

### A.  42 U.S.C. § 1983 Claims

Mr. Lewis brings his second and fourth claims under 42 U.S.C. § 1983, alleging

that defendants violated his due process rights.[2]  Docket No. 1 at 13-15, 18-21.  Mr.

Lewis' second claim for relief is based on defendants' actions related to the Home

Equity Line of Credit Deed of Trust ("HELOC DOT").  Docket No. 1 at 13-15.  Mr. Lewis

alleges that defendants misused the Colorado non-judicial foreclosure procedure

through a "deliberate failure to compel the Rule 120 proceeding."  *Id.* at 14, ¶ 30.  Mr.

Lewis' fourth claim for relief is based upon defendants' actions related to the mortgage

deed of trust ("mortgage DOT"), a deed of trust on which defendants, following a Rule

120 proceeding, obtained an order authorizing sale.  *Id.* at 18-21.  Mr. Lewis alleges

that defendants misused the Colorado non-judicial foreclosure procedure by submitting

knowingly false information to the Denver County Public Trustee ("Public Trustee"), the

state court during the Rule 120 proceeding, and to Mr. Lewis himself.  *Id.* at 20-21,

¶¶ 57, 61.  The primary basis for Mr. Lewis' fourth claim, however, is that defendants

---

[2]Mr. Lewis second and fourth claims are titled "Violation of Due Process and Equal Protection Clause."  Docket No. 1 at 13-15, 18-21.  However, Mr. Lewis' complaint does not contain any allegations to support an equal protection claim.  *See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) ("An equal protection violation occurs when the government treats someone differently than another who is similarly situated.").  Thus, despite the title, the Court does not construe such claims as equal protection claims.

used the Colorado non-judicial foreclosure procedure to violate his constitutional right to due process. *Id.* at 20-21.[3]  Mr. Lewis also claims that Colo. Rev. Stat. § 38-38-101 and Colo. R. Civ. P. 120 "work in direct contravention of the Constitutional Due Process clause" and that the Castle defendants were involved in the legislative process that led to the enactment of the Colorado non-judicial foreclosure procedure. *Id.* at 19, 20 ¶¶ 55, 60.  The Recommendation concluded that Mr. Lewis failed to allege that defendants were state actors under § 1983.  Docket No. 90 at 14-15.  Mr. Lewis objects on several grounds.  Docket No. 97 at 2-8.

Under § 1983, persons acting under the color of state law can be held liable for depriving others of their constitutional rights.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).  In order to show that an action was taken under color of state law, a plaintiff must show: (1) that the "alleged constitutional deprivation [was] 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible,'" and (2) that the "'party charged with the deprivation [was] a person who may fairly be said to be a

---

[3]Mr. Lewis' fourth claim for relief also alleges that defendant's conduct is subject to 42 U.S.C. §§ 1985, 1986, and 1988.  Docket No. 1 at 19.  To state a claim under § 1985 for a private conspiracy, a plaintiff must allege "(a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that that right was consciously targeted and not just incidentally affected." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001).  Mr. Lewis states that he is African American, but does not otherwise make any allegations regarding race or another protected class and thus his claim fails as a matter of law.  Docket No. 1 at 2.  Since a claim under § 1986 "depends on the existence of a claim under § 1985," *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983), to the extent Mr. Lewis states a claim under § 1986, it fails as well.  42 U.S.C. § 1988 is a fee-shifting provision that does not provide a basis for liability.

state actor.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982)).

### 1.  Right or Privilege Created by the State

The Court turns to the first prong of the test.  Mr. Lewis' second claim for relief, and to a lesser extent his fourth claim for relief, allege that defendants misused the Colorado non-judicial foreclosure procedure.[4]  Alleging a "'private misuse' of state laws" fails to satisfy the first prong of the color of law test.  *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1209 (10th Cir. 2005) (citing *Lugar*, 547 U.S. at 941).  Thus, to the extent Mr. Lewis alleges that defendants failed to use (or misused) state procedures, Mr. Lewis fails to allege that he was deprived of a constitutional right by "the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible."  *See Sullivan*, 526 U.S. at 50 (internal quotations omitted).

### 2.  State Actor

The Court turns to the second prong of the test.  In order to determine whether a private party can be considered a state actor under § 1983, a court may apply a variety of tests depending on the facts of each case.  *Gallagher v. Neil Young Freedom*

---

[4]Mr. Lewis' allegations are somewhat inconsistent.  Mr. Lewis' second claim for relief alleges that Colorado foreclosure law is "unconstitutional on its face," yet accuses defendants of scheduling his home for sale in a "deliberate failure to compel the Rule 120 proceeding."  Docket No. 1 at 13-14, 20.  Accordingly, it is unclear whether Mr. Lewis claims that defendants violated his constitutional rights by unlawfully acquiring a notice of election and demand or by failing to initiate a Rule 120 proceeding.  With respect to Mr. Lewis' fourth claim for relief, it is unclear if Mr. Lewis claims that his constitutional rights were violated when defendants allegedly used false documents to commence the foreclosure proceeding or because defendants followed the allegedly unconstitutional Colorado non-judicial foreclosure procedure.  The Court need not resolve this inconsistency because, for the reasons stated below, Mr. Lewis' claims also fail to meet the test's second prong.

*Concert*, 49 F.3d 1442, 1448 (10th Cir. 1995). Under the nexus test, a plaintiff must allege "'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). Under the symbiotic relationship test, the plaintiff must show that "the state has 'so far insinuated itself into a position of interdependence' with the private party' so as to create a symbiotic relationship between the two. *Gallagher*, 49 F.3d at 1447 (quoting *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972)). Under the public function test, a plaintiff must show that a private party exercised "powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352. Under the joint action test, a plaintiff must show that a private party is "a willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 152 (internal quotation marks omitted). The question asked by each test is whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Lugar*, 457 U.S. at 937.

Mr. Lewis' primary argument is that defendants[5] and the Public Trustee engaged in joint action. Mr. Lewis alleges that the Public Trustee "works at the behest" of defendants and that the defendants used the authority of the Public Trustee to deprive Mr. Lewis of his constitutional rights. Docket No. 97 at 2-3. A private party invoking a state legal procedure does not transform itself into a state actor. *Read v. Klein*, 1 F. App'x 866, 871 (10th Cir. 2001); *accord Ramsey v. Citibank, N.A.*, No. 10-cv-02653-

---

[5]Although the Castle defendants served as Chase's attorneys, for purposes of determining state action under § 1983, attorneys stand on the same legal footing as their clients. *See Hoai v. Vo*, 935 F.2d 308, 313 n.5 (D.C. Cir. 1991).

WYD-CBS, 2011 WL 4485918, at *5 (D. Colo. Sep. 28, 2011) (adopting recommendation of magistrate judge that bank who invoked Rule 120 was not state actor under § 1983).  The "mere acquiescence of a state official in the actions of a private party is not sufficient."  *Gallagher*, 49 F.3d at 1453; *accord Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978).

Some courts look to the requirements for establishing a conspiracy when considering whether a private party engaged in joint action and conclude that a state action may be found if "public and private actors share a common, unconstitutional goal [such as] if a state actor has participated in or influenced the challenged decision or action."  *Gallagher*, 49 F.3d at 1454 (internal quotation marks omitted).  In *Cobb v. Saturn Land Co., Inc.*, 966 F.2d 1334 (10th Cir. 1992), a private party exercised its right to obtain pre-judgment oil and gas liens under Oklahoma law.  *Id.* at 1335.  Plaintiff argued that, although the liens were never enforced, the statutory scheme was unconstitutional and frustrated his ability to sell the encumbered property.  *Id.*  The Tenth Circuit adopted the district court's finding that "the actions of the county clerk, who merely accepted and recorded the required lien materials prepared by Defendant and then issued filing notices to Plaintiff, were not substantial enough to bring Plaintiff's claim within the ambit of § 1983."  *Id.* at 1337; *see also Sullivan*, 526 U.S. at 53 (holding that when a private party files a form with a state agency or state official and such agency official processes the form for technical compliance, the private party is not transformed into a state actor).

Mr. Lewis' claim that the Colorado non-judicial foreclosure procedure gave

defendants "complete power" to decide whether or not to foreclose is simply an allegation that defendants made use of state legal procedures.  *See Read*, 1 F. App'x at 871.  Similarly, Mr. Lewis' allegation that, "[b]ut for this power given to the Defendants by the state," defendants could have not initiated (or failed to initiate) foreclosure proceedings, Docket No. 97 at 4, ¶¶ 5-7, is plainly insufficient to transform defendants into state actors.  *See Flagg Bros.*, 436 U.S. at 164 (rejecting argument that private action can be attributed to the state because action was authorized by state statute).  Allegations that defendants filed a notice of election and demand with the Public Trustee and that the Public Trustee processed defendants' notice of election and demand and issued a notice of hearing are insufficient to show that the state and defendants engaged in a joint activity.  *See Cobb*, 966 F.2d at 1337.  Moreover, Mr. Lewis fails to allege a conspiracy between defendants and the Public Trustee, or any other state official, and does not otherwise allege that the state compelled defendants' decision to file a notice of election and demand and to commence a Rule 120 proceeding.  *See Flagg Bros.*, 436 U.S. at 166.  Rather, if Colorado lacked a non-judicial foreclosure procedure, "its courts would still be faced with the decision whether to prohibit or to permit the sort of sale threatened here[, and a] judicial decision to deny relief would be no less an 'authorization' or 'encouragement' of that sale than the legislature's decision embodied in [the statutes]."  *See Flagg Bros.*, 436 U.S. at 165.  As such, Mr. Lewis fails to allege state action under the joint activity test.

Mr. Lewis' allegations are similarly insufficient under the remaining tests.  With respect to the nexus test, "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant

8

encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yarestky*, 457 U.S. 991, 1004 (1982).  Mr. Lewis does not allege that the Public Trustee or other state officials coerced or encouraged defendants to commence foreclosure proceedings.  Mr. Lewis appears to argue that, because defendants paid the Public Trustee's filing fees pursuant to Colo. Rev. Stat. § 38-37-104(b), defendants conferred upon the Public Trustee a significant financial benefit that created a symbiotic relationship.  Docket No. 97 at 6-7, ¶¶ 14-15.  Mr. Lewis raises this argument for the first time in his objection and, as such, the Court need not consider it. *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (noting that issues raised for the first time in objections to magistrate judge's recommendation are deemed waived).  Moreover, Mr. Lewis fails to explain how the modest filing fees contemplated by § 38-37-104 are significant enough to create a symbiotic relationship.  *Cf. Burton v. Wilmington Parking Authority*, 365 U.S. 715, 724 (1961) (holding that symbiotic relationship existed between state lessor and private lessee such that profits earned by lessee were indispensable elements in the financial success of state lessor).  With regard to the public function test, Mr. Lewis also fails to provide any authority upon which to conclude that the state delegated to defendants a function "traditionally exclusively reserved to the State."  *See Jackson*, 419 U.S. at 352; *Flagg Bros.*, 436 U.S. at 161 ("the settlement of disputes between debtors and creditors is not traditionally an exclusive public function").

Mr. Lewis argues that the Recommendation erred by failing to accept as true the allegations in his complaint.  Docket No. 97 at 2.  Mr. Lewis' allegation that defendants "were and are state actors," Docket No. 1 at 19, ¶ 54, is a legal conclusion that is not

entitled to the presumption of truth.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The magistrate judge found many of Mr. Lewis' allegations regarding defendants being

state actors conclusory.  Docket No. 90 at 14.  Conclusory allegations provide

insufficient factual support for a § 1983 claim.  *See Sooner Prods. Co. v. McBride*, 708

F.2d 510, 512 (10th Cir. 1983) ("When a plaintiff in a § 1983 action attempts to assert

the necessary 'state action' by implicating state officials or judges in a conspiracy with

private defendants, mere conclusory allegations with no supporting factual averments

are insufficient; the pleadings must specifically present facts tending to show

agreement and concerted action.").  The Court finds no error in this aspect of the

Recommendation.  The Court also rejects Mr. Lewis' allegation that, by virtue of

participating in the legislative process that led to the enactment of Colorado's non-

judicial foreclosure scheme, the Castle defendants are state actors.  *See* Docket No. 97

at 3.  The Court is aware of no authority that supports Mr. Lewis' position that private

parties are transformed into state actors because of their efforts to influence legislation.

*Cf. Chapel Farm Estates, Inc. v. Moerdler*, 2003 WL 21998964, at *6 (S.D.N.Y. Aug. 22,

2003) (finding that homeowners association was not state actor by virtue of its efforts to

lobby city council).

### 3.  *Lugar v. Edmondson Oil*

Mr. Lewis' citation of *Lugar* in support of his claim that defendants are state

actors merits discussion.  In *Lugar*, a creditor sought pre-judgment attachment of a

debtor's property pursuant to a Virginia statute.  457 U.S. at 924.  The attachment

procedure required only that the creditor allege, through an *ex parte* petition, a belief

that the debtor "was disposing of or might dispose of his property in order to defeat his creditors." *Id.* Pursuant to the creditor's petition, the clerk of the state court issued a writ of attachment, which was later executed by the sheriff. *Id.* Although the subject property was left in the debtor's possession, the subject property was "effectively sequestered." *Id.* at 924-25. A hearing was held 34 days later and the judge ordered the attachment dismissed. *Id.* at 925.

The debtor subsequently brought a § 1983 action against the creditor alleging that the creditor unlawfully misused state procedure to deprive the debtor of his constitutional rights and that the creditor acted pursuant to a statute that was procedurally defective under the Fourteenth Amendment. *Id.* at 940-41. The Supreme Court upheld the dismissal of the former claim, holding that unlawful misuse of a state procedure "could in no way be attributed to a state rule or a state decision." *Id.* The Court reached the opposite conclusion with respect to the latter claim that the state and the creditor acted jointly under an unconstitutional state statute. *Id.* at 942. "[T]he Court has consistently held that constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever officers of the State act jointly with a creditor in securing the property in dispute." *Id.* at 932-33 (citing *Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969); *North Ga. Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600 (1974)). After determining that its prior decisions stand for the proposition that a debtor can challenge the procedure under which a private creditor secured disputed property, the Court reasoned that "private use of the challenged state procedures with the help of

11

state officials constitutes state action for purposes of the Fourteenth Amendment."

*Lugar*, 457 U.S. at 933. However, focusing on the nature of the underlying proceeding

between creditor and debtor, the Court held that the debtor had sufficiently alleged that

the creditor was a state actor where "the State has created a system whereby state

officials will attach property on the *ex parte* application of one party to a private

dispute." *Id.* at 942.

The Supreme Court has subsequently declined to interpret *Lugar* broadly and in

some cases has instead limited the holding in *Lugar* to situations "'whereby state

officials will attach property on the *ex parte* application of one party to a private

dispute.'" *Sullivan*, 526 U.S. at 58 (quoting *Lugar*, 457 U.S. at 942) (rejecting argument

that state statute authorizing workers' compensation insurers to withhold medical

payments pending review transformed insurers into state actors because there was no

*ex parte* application to a state official); *see also Wyatt v. Cole*, 504 U.S. 158, 161-162

(1992) ("In [*Lugar*], the Court held that private parties who attached a debtor's assets

pursuant to a state attachment statute were subject to § 1983 liability if the statute was

constitutionally infirm."). The Tenth Circuit, in an unpublished decision, also recognized

that the holding in *Lugar* was in reference to *ex parte* property attachments. *Read*, 1 F.

App'x at 872 (holding that parties to litigation and their lawyers do not become state

actors by obtaining orders from state court judge in divorce and child support case); *see

also Hansen v. Permanente Medical Grp, Inc.*, 166 F. App'x 907, 908 (9th Cir. 2006)

(noting that holding in *Lugar* is limited to *ex parte* attachments); *Deal v. Newport Datsun

Ltd.*, 706 F.2d 141, 142 (4th Cir. 1983) (limiting *Lugar* to "prejudgment attachment

situations"); *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) (distinguishing statute in *Lugar* with North Dakota statute permitting employer to challenge an award of workers' compensation benefits). *But see Texaco Inc. v. Pennzoil*, 784 F.2d 1133, 1146 (2d Cir. 1986), *reversed on other grounds by* 481 U.S. 1 (1987), (holding that, where the seizure of assets would require calling on state officials, to "limit the *Lugar* rationale to prejudgment attachments would violate the precept that § 1983 provides a [broad] remedy").

Mr. Lewis' complaint, as in *Lugar*, can arguably be construed as alleging that Colo. Rev. Stat. § 38-38-101, *et seq.*, and Rule 120 are unconstitutional and that defendants acted pursuant to those procedures to deprive him of property. *See* Docket No. 1 at 16-17. However, Mr. Lewis' case is distinguishable from *Lugar* in several key respects. Unlike the plaintiff in *Lugar*, Mr. Lewis had the benefit of notice and hearing prior to the point at which defendants were legally entitled to initiate a foreclosure sale. In that regard, Mr. Lewis does not allege that he lacked notice of defendants' intent to foreclose and does not claim that defendants or the public trustee failed to notify him following defendants' filing of each notice of election and demand. Moreover, Mr. Lewis does not allege that he lacked an opportunity to be heard or that defendants dispossessed him of his property *ex parte*.

With respect to the HELOC DOT, on December 15, 2009, defendants filed a notice of election and demand, but did not initiate a Rule 120 proceeding. Docket No. 1 at 7, 9, ¶¶ 2, 9. No order authorizing sale was ever issued and Mr. Lewis does not allege that his property was otherwise affected prior to receiving notice from defendants

13

or the public trustee.[6]   With respect to the mortgage DOT, on May 7, 2012, defendants filed a notice of election and demand and subsequently initiated a Rule 120 proceeding. Docket No. 1 at 10-11, ¶¶ 16-17.   Mr. Lewis alleges that defendants obtained an order authorizing sale, but does not allege that the order was obtained without notice or that he lacked an opportunity to respond to defendants' motion for order authorizing sale. *See* Colo. R. Civ. P. 120[7]; *Ramsey*, 2011 WL 4485918, at *4.   Defendants did not acquire the equivalent of an attachment on Mr. Lewis' property until, at the earliest, they acquired an order authorizing sale – well after Mr. Lewis was provided notice and an opportunity to be heard.   *See* Blacks Law Dictionary 137 (8th ed. 2004) (defining "attachment" as the "seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment").   Defendants did not ultimately dispossess Mr. Lewis of his home and Mr. Lewis does not allege that his property was "effectively sequestered."   *Cf. Lugar*, 457 U.S. at 924-25.   Moreover, because defendants moved to withdraw the order authorizing sale, defendants did not ultimately sell Mr. Lewis' property with the aid of state officials.   *Cf. Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1266-

---

[6]Although Mr. Lewis claims that, upon his default under the HELOC DOT, defendants scheduled his home for sale, in order for the public trustee to foreclose upon a deed of trust the holder of the evidence of debt must obtain an order authorizing sale pursuant to Rule 120.   Colo. Rev. Stat. § 38-38-105(2)(a).   It is undisputed that defendants did not initiate a Rule 120 proceeding.   As such, defendants were without state authority to complete a foreclose sale upon the HELOC DOT, which, for the reasons stated above, is a private misuse of state law that cannot be attributed to the state.   *See Yanaki*, 415 F.3d at 1209.   To the extent Mr. Lewis argues that resetting the date of sale 49 times was unlawful, the same reasoning applies.

[7]"If no response has been filed within the time permitted . . . the court shall examine the motion and, if satisfied that venue is proper and the moving party is entitled to an order authorizing sale upon the facts stated therein, the court shall dispense with the hearing and forthwith enter an order authorizing sale."   *Id.*

67 (3d Cir. 1994) (holding that plaintiff failed to allege "sufficient state involvement in the entry of the judgment" but that plaintiff succeeded in showing that landlord and attorney were state actors where, after the entry of judgment, sheriff served a writ and garnished plaintiff's checking account at the direction of landlord and attorney).  Mr. Lewis' situation was not, therefore, the equivalent of the *ex parte* attachment of property contemplated by *Lugar*.  As such, Mr. Lewis cannot sufficiently allege that defendants are state actors simply by alleging that the Colorado non-judicial foreclosure procedure is unconstitutional and that defendants used such a procedure to effect a constitutional deprivation.[8]

For the foregoing reasons, the Court finds no error in the Recommendation's conclusion on this issue.  The Court will dismiss with prejudice Mr. Lewis second and fourth claims for relief.

## B.  FDCPA Claims

### 1.  Fifth Claim for Relief

Mr. Lewis' fifth claim for relief alleges that defendants violated the FDCPA by sending notices on December 16, 2009 and February 17, 2010 that demanded payment of a debt.[9]  Docket No. 1 at 22, ¶¶ 67-70.  The Recommendation concluded

---

[8]The Court does not construe Mr. Lewis' complaint as seeking a declaratory judgment on the constitutionality of the Colorado non-judicial foreclosure procedure.  Thus, the constitutionality of the Colorado non-judicial foreclosure procedure is raised only under Mr. Lewis' § 1983 claims.  Because Mr. Lewis has failed to allege that defendants were state actors under § 1983, his § 1983 claims fail and the Court need not resolve Mr. Lewis' objections related to the constitutionality of the Colorado non-judicial foreclosure procedure.

[9]To the extent Mr. Lewis' fifth and sixth claims for relief can be construed as arising under the Colorado Fair Debt Collection Practices Act, such claims will be

that Mr. Lewis' fifth claim for relief under the FDCPA against the Castle defendants was barred by the statute of limitations.  Docket No. 90 at 18.  Mr. Lewis does not object to the Recommendation's conclusion on this issue.

A plaintiff seeking to bring an action under the FDCPA must bring an action "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d); *see also Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002).  Thus, where Mr. Lewis' complaint was filed on May 28, 2013, alleged violations of the FDCPA occurring on December 16, 2009 and February 17, 2010 are barred by the statute of limitations. *See Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("when the dates given in the complaint make clear that the right sued upon has been extinguished . . . [s]tatute of limitations questions may, therefore, be appropriately resolved on a Fed. R. Civ. P. 12(b) motion").  The Court finds no error with this aspect of the Recommendation and will dismiss Mr. Lewis' fifth claim for relief against the Castle defendants with prejudice.

Mr. Lewis' fifth claim for relief states identical allegations against Chase.  The Recommendation did not discuss whether Mr. Lewis' fifth claim for relief against Chase was barred by the statute of limitations given that the Recommendation concluded Chase was not a debt collector under the FDCPA.  Docket No. 90 at 15-17.  Chase raised a statute of limitations defense in its motion to dismiss, Docket No. 60 at 12-13, to which Mr. Lewis failed to respond.  Docket No. 78 at 10-13.  Because Mr. Lewis failed to respond to Chase's statute of limitations defense, the Court finds that Mr.

---

analyzed below with the rest of Mr. Lewis' state law claims.

Lewis has waived argument on this issue.  Thus, because Mr. Lewis' allegations against the Castle defendants and Chase are identical with respect to his fifth claim for relief, the Court finds that Mr. Lewis' fifth claim for relief against Chase is also barred by the statute of limitations and the Court will dismiss the claim with prejudice.

### 2. Sixth Claim for Relief

Mr. Lewis' sixth claim for relief concerns Chase's and Castle's actions in seeking to collect on the mortgage loan.  Docket No. 1 at 24-25.  Mr. Lewis alleges that Chase and Castle sent threatening notices on May 17, 2012 and July 16, 2012 in violation of the FDCPA.[10]  *Id.* at 24, ¶ 81.  The Recommendation concluded that Chase was not a "debt collector" under the FDCPA.  Docket No. 90 at 15.  Mr. Lewis objects, arguing that Chase did not own the mortgage loan and, as such, that Chase was a debt collector under the FDCPA.  Docket No. 97 at 9.

The FDCPA defines a debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects . . . debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Excluded from the definition are those entities who collect or attempt to collect "any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  § 1692a(6)(F).  "The legislative history of section 1692a(6) indicates conclusively that a debt collector

---

[10]"[S]eparate communications can create separate causes of action arising from collection of a single debt."  *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) (unpublished).   Thus, Mr. Lewis' sixth claim for relief appears to be barred to the extent it is based upon the May 17, 2012 notice.

does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *see also Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 495 (10th Cir. 2010) (unpublished); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1355 (D. Utah 2009) ("a loan servicer such as Fifth Third is only a 'debt collector' within the meaning of the FDCPA if it acquires the loan after it is in default").

The Recommendation found that the mortgage loan was executed in favor of Chase in 2003 and, accordingly, that Chase had an interest in the loan prior to default. Docket No. 90 at 16. The Recommendation also noted that Mr. Lewis failed to allege that the subject loans were in default when Chase became the noteholder. *Id.* at 17. Mr. Lewis argues that Chase was not the owner of the mortgage loan, and was therefore a debt collector, when it commenced foreclosure proceedings in May 2012. Docket No. 97 at 9 (citing Docket No. 1-1 at 11).

Alleging that Chase does not own the mortgage loan is not the equivalent of alleging that Chase is a debt collector under the FDCPA. Mr. Lewis' complaint is devoid of allegations that Chase's principal business purpose is the collection of debts or that Chase regularly attempts to collect debts. *See* 15 U.S.C. § 1692a(6); *Birster v. Am. Home Mortg. Servicing, Inc.*, 481 F. App'x 579, 583 (11th Cir. 2012) (remanding for failure to determine whether mortgage servicer regularly collected debts). Mr. Lewis admits that the mortgage loan was originated by Chase in 2003 and alleges that default occurred in 2009. Docket No. 1 at 9, ¶ 10; Docket No. 97 at 10; *see, e.g.*, Docket No. 60-3 at 1. Mr. Lewis alleges only that "ownership of the promissory note and deed of

18

trust" transferred to another entity, Freddie Mac, prior to November 17, 2009.  Docket No. 1 at 9, ¶ 12.  Mr. Lewis bases this allegation on testimony from Peter Katsikas at the Rule 120 hearing on the mortgage loan, where Mr. Katsikas states that Chase did not own the mortgage loan.  Docket No. 1-1 at 11.  However, Mr. Lewis does not allege that Chase failed to retain *any* interest in the mortgage loan.  To the contrary, Mr. Katsikas testified that "J.P. Morgan Chase NA is the servicer."  *Id.*  In fact, Mr. Lewis indicates that, to the extent he continued to make loan payments, he made all payments to Chase.  *See* Docket No. 1-1 at 3; 12 U.S.C. § 2605(h)(i)(3) (loan servicers are those entities responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan").  Mr. Lewis also admits that Chase sent him the Home Affordable Modification Trial Period Plan with respect to the mortgage loan.  Docket No. 1 at 8-10, ¶¶ 5, 13; *see Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) ("A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." (internal quotation marks omitted)).  Mr. Lewis' allegation that Chase did not own the loans is, by itself, insufficient to state a claim that Chase was a debt collector under the FDCPA.  *See Perry*, 756 F.2d at 1208 ("[N]either Hammond nor FNMA is a debt collector.  Hammond sold the Perry loan to FNMA approximately . . . 2 months before [default].  After Hammond sold the loan, it continued to service the loan for FNMA."); *Garrett v. BNC Mortgage, Inc.*, 929 F. Supp. 2d 1120, 1128 (D. Colo. 2013) ("because the complaint alleges that Wells Fargo acted only as a loan servicer in this case, and does not allege that Wells Fargo acquired servicing rights after default, plaintiffs do not state a claim against Wells Fargo under the FDCPA").

19

Mr. Lewis also suggests that the merger of Chase Home Finance LLC and JPMorgan Chase Bank National Association occurred on May 1, 2011, after his loan was already in default.  Docket No. 97 at 10.  The Recommendation noted that Mr. Lewis' complaint mentions five entities: Chase Home Financing, LLC; Chase Home Finance; Chase Manhattan Bank, USA, NA; Chase Manhattan Mortgage Corporation; and JPMorgan Chase Bank, N.A.  Docket No. 90 at 1, n.3.  The Recommendation took judicial notice that the five separate entities merged into JPMorgan Chase Bank, N.A. *Id.*  Mr. Lewis does not challenge the magistrate judge's decision to take judicial notice of the mergers.  Rather, Mr. Lewis claims that his loan was not an asset of Chase Home Finance, LLC when it merged with JP Morgan Chase Bank, N.A. on May 1, 2011, a merger he argues took place after his loan was in default.  Docket No. 97 at 10.  Mr. Lewis' argument is unconvincing.  *See Pascal v. JPMorgan Chase Bank, Nat'l Ass'n*, 2013 WL 5878142, at *2 (S.D.N.Y. 2013) ("where a company acquires a debt through its merger with a previous servicer of the plaintiff's mortgage, rather than via a specific assignment, the debt was not 'obtained' while it was in default.").

The Court finds that Mr. Lewis has failed to sufficiently allege that Chase was a debt collector under the FDCPA and that amendment, which Mr. Lewis has not sought, would be futile.  Thus, the Court will dismiss Mr. Lewis' sixth claim for relief against Chase with prejudice.

With respect to Mr. Lewis' sixth claim for relief against the Castle defendants, the Recommendation concluded that Mr. Lewis' claims for violation of 12 U.S.C. § 1692e and § 1692f should be dismissed with prejudice and Mr. Lewis' claim for violation of § 1692g be dismissed without prejudice.  Docket No. 90 at 25.  Mr. Lewis does not

20

object to the Recommendation's conclusion on this point. The Court finds no error with this aspect of the Recommendation.

### C. State Law Claims

The Recommendation concluded that Mr. Lewis' remaining state law claims for intentional and negligent misrepresentation and violations of the CFDCPA be dismissed without prejudice for lack of subject matter jurisdiction. Docket No. 90 at 25-26. Where the subject matter jurisdiction was based upon 28 U.S.C. § 1331 and § 1367, the Recommendation found no basis to exercise supplemental jurisdiction over Mr. Lewis' state law claims. *Id.* Mr. Lewis does not object to this aspect of the Recommendation and his complaint does not allege the existence of diversity jurisdiction under § 1332. In the Tenth Circuit, when "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), courts must dismiss pendent state law claims without prejudice "'absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police Dep't*, 415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed"). *But see Henderson v. Nat'l R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (unpublished) (finding no abuse of discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff voluntarily dismissed claims arising under federal law). Thus, where Mr. Lewis' federal law claims have been dismissed, the Court finds no compelling reason to exercise supplemental jurisdiction

21

over Mr. Lewis' state law claims.

## II.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation of Magistrate Judge [Docket No. 90] is

**ACCEPTED**.  It is further

**ORDERED** that Castle's Motion to Dismiss for Failure to State a Claim [Docket

No. 31] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss

Complaint for Damages, Injunctive Relief and Jury Demand Pursuant to Fed. R. Civ. P.

12(b)(6) (Docket No. 1) [Docket No. 60] is **GRANTED** in part and **DENIED** in part.  It is

further

**ORDERED** that plaintiff's second and fourth claims for relief are **DISMISSED**

with prejudice.  It is further

**ORDERED** that plaintiff's fifth claim for relief for violation of the FDCPA is

**DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's sixth claim for relief for violation of the FDCPA by

defendant Chase is **DISMISSED** with prejudice.  It is further

**ORDERED** that plaintiff's sixth claim for relief for violation of § 1692e and

§ 1692f of the FDCPA against the Castle defendants is **DISMISSED** with prejudice.  It

is further

**ORDERED** that plaintiff's sixth claim for relief for violation of § 1692g of the

FDCPA against the Castle defendants is **DISMISSED** without prejudice.  It is further

**ORDERED** that plaintiff's state law claims are **DISMISSED** without prejudice.  It is further

**ORDERED** that this case is dismissed in its entirety.


DATED March 24, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge